1    **JS-6**    'O'

2

3

4

5

6

7

8             UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11

12   CARMEN JOHN PERRI,              CV 20-05849-RSWL-KSx

13            Plaintiff,            **ORDER re: Plaintiff's
                                     Application for Default
14        v.                        Judgment** [16]

15

16

17   CA 199 ARCADIA OWNER LLC;
     and DOES 1 to 10,

18            Defendants.

19

20

21

22       Plaintiff Carmen John Perri ("Plaintiff") claims

23   that Defendant CA 199 Arcadia Owner LLC ("Defendant")

24   violated the Americans with Disabilities Act ("ADA") and

25   California's Unruh Civil Rights Act ("Unruh Act").

26   Currently before the Court is Plaintiff's Application

27   for Default Judgment (the "Application") [16].  Having

28   reviewed all papers submitted pertaining to this

                              1

Application, the Court **NOW FINDS AND RULES AS FOLLOWS**: the Court **GRANTS in part** and **DENIES in part** the Application.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff suffers from impaired musculoskeletal, neurological, circulatory, and cardiovascular systems. Compl. ¶ 1, ECF No. 1.  He has also been diagnosed with atrial fibrillation.  Id.  Because of these conditions, Plaintiff is substantially limited in walking, standing, and/or sitting, and often relies on mobility devices. Id.

Defendant owned and owns the property located at 199 North Second Ave., Arcadia, California 91006 (the "Property").  Id. ¶¶ 2-3.  On June 22, 2020, Plaintiff visited the Hilton Garden Inn Arcadia (the "Business")[1] located on the Property.  Id. ¶¶ 4, 8.  Upon arrival, Plaintiff found that the Property did not have designated parking spaces for persons with disabilities. Id. ¶ 11.  Plaintiff also found that there were "architectural barriers to access at the parking area where a built-up ramp projects from the sidewalk and into the access aisle . . . and the curb ramp is in excess of the maximum grade allowed . . . ."  Decl. of Pl. Carmen John Perri in Supp. of Pl's Request for

---

[1] Plaintiff does not know whether Defendant is connected to or owns the Business, which is located on the Property.  Compl. ¶ 4.

2

1  Default J. ("Pl.'s Decl.") ¶ 6, ECF No. 16-4.  Plaintiff
2  personally encountered these barriers.  Id. ¶¶ 4-6;
3  Compl. ¶ 16.  Plaintiff intends to return to the
4  Business to test its compliance with disability access
5  laws, but he is currently deterred from doing so.
6  Compl. ¶ 20; Pl.'s Decl. ¶ 8.

7  **B.   Procedural Background**

8       Plaintiff filed his Complaint [1] on June 30, 2020,
9  alleging violations of the ADA and Unruh Act.  Plaintiff
10 served Defendant [13] on August 26, 2020.  Defendant has
11 not pleaded, answered, or otherwise appeared in this
12 Action.  The Clerk of Court entered default [15] on
13 September 24, 2020.  On October 12, 2020, Plaintiff
14 filed the present Application [16].  Plaintiff seeks an
15 order enjoining Defendant to provide ADA-compliant
16 premises.  Compl. 8:18-23.  Plaintiff also requests
17 awards of $4,000 in statutory damages and $3,932 in
18 attorneys' fees and costs.  Id. ¶¶ 2-4; Decl. of Joseph
19 Manning in Supp. of Appl. ("Manning Decl."), Billing
20 Summary, ECF No. 16-7.

21              **II.   DISCUSSION**

22 **A.   Legal Standard**

23      Federal Rule of Civil Procedure ("Rule") 55(b)
24 authorizes a district court to grant default judgment.
25 Pursuant to Local Rule 55-1, the party moving for
26 default judgment must submit a declaration
27 establishing: (1) when and against which party default
28 was entered; (2) on which pleading default was entered;

(3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) proper service.  Upon default, all factual allegations in the complaint, except those relating to damages, are assumed to be true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

In exercising its discretion to grant default judgment, the court must consider the following factors: (1) possibility of prejudice to the plaintiff, (2) merits of the substantive claim, (3) sufficiency of the complaint, (4) sum of money at stake in the action, (5) possibility of disputes regarding material facts, (6) whether excusable neglect caused the default, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).  Additionally, if the defaulting party failed to plead or otherwise defend, the Court must determine that it has subject matter and personal jurisdiction.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  When default judgment is granted, the relief awarded "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

**B.  Discussion**

    1.  Jurisdiction

        a.  *ADA Claim*

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 for violations of the ADA.  <u>See Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.</u>, 867 F.3d 1093, 1098 (9th Cir. 2017).  Moreover, the Court has personal jurisdiction over Defendant because it has "certain minimum contacts" with California such that "the suit does not offend 'traditional notions of fair play and substantial justice.'"  <u>Calder v. Jones</u>, 465 U.S. 783, 788 (1984) (quotation omitted).  Specifically, Defendant owned and owns the Property located at 199 North Second Ave., Arcadia, CA 91006.  Compl. ¶¶ 2-3.

        b.  *Supplemental Jurisdiction & Plaintiff's Unruh Act Claim*

The Court has supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Even if supplemental jurisdiction exists, district courts have discretion to decline supplemental jurisdiction "in exceptional circumstances" or where "there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).  The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "'economy, convenience, fairness, and comity'" that

underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172–73 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988)).

California's Unruh Civil Rights Act provides: "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51.  Unlike the ADA, however, the Unruh Act provides for recovery of monetary damages.  Id. § 52(a).

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act."  Velez v. Il Fornanio (Am.) Corp., No. 3:18-CV-1840-CAB-MDD, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018).  These heightened pleading requirements apply to actions alleging a "construction-related accessibility claim," which California law defines as "any civil claim in a civil action with respect to a place of public accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard."  Cal. Civ. Code § 55.52(a)(1).

When California continued to experience large numbers of these actions, California imposed additional limitations on "high-frequency litigants."[2]  In support of its imposition of additional requirements on high-frequency litigants, the California Legislature found and declared:

> [M]ore than one-half, or 54 percent, of all construction-related accessibility complaints filed between 2012 and 2014 were filed by two law firms.  Forty-six percent of all complaints were filed by a total of 14 parties. Therefore, a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year. Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation.  This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations . . . .

Cal. Civ. Proc. Code § 425.55(a)(2).  In response to the "special and unique circumstances" surrounding disability access litigation, id. § 425.55(3), California imposed a "high-frequency litigant fee," requiring high-frequency litigants[3] to pay a $1,000

---

[2] A high-frequency litigant is defined as a plaintiff who has filed ten or more complaints alleging a construction-related accessibility violation within the twelve-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.  Cal. Civ. Proc. Code § 425.55(b)(1).

[3] Here, Plaintiff concedes that he qualifies as a high-frequency litigant under California law.  See Pl.'s Decl. in Supp. of Resp. ¶ 2, ECF No. 10-1 ("I have filed more than 10 complaints alleging construction-related accessibility violations within the 12-month period immediately preceding the filing of

filing fee in addition to the normal fee at the time of filing a complaint.  Cal. Gov't Code § 70616.5.

Because California's heightened pleading standards and increased filing fees do not apply in federal court, plaintiffs can circumvent the restrictions California has imposed on construction-related accessibility claims by relying on a grant of supplemental jurisdiction over any Unruh Act claim, when combined with an ADA claim for injunctive relief.  The number of construction-related accessibility claims filed in the Central District has significantly increased since California sought to curtail such actions in its state courts:

> According to statistics compiled by the Clerk's Office, in 2013, the first year in which California's initial limitations on such cases were in effect, there were 419 ADA cases filed in the Central District, which constituted 3% of the civil actions filed. Filings of such cases increased from 928 (7% of civil cases) in 2014, the year before the imposition of the additional $1,000 filing fee and additional pleading requirements for high-frequency litigants, to 1,386 (10% of civil cases) in 2016, the first full year of those requirements. The number and percentage of such cases filed in the Central District has increased in each year since California acted to limit the filings by high-frequency litigants, reaching 1,670 (12% of civil cases) in 2017, 1,670 (18% of civil cases) in 2018, and 1,868 cases (24% of civil cases) in the first six months of 2019.

the complaint in this action.").

8

<u>Garibay v. Rodriguez</u>, No. CV 18-9187 PA (AFMx), 2019 WL 5204294, at *4 (C.D. Cal. Aug. 27, 2019).

In enacting restrictions and additional fees for the filing of construction-related accessibility claims, California sought to limit the burden these types of cases put on its businesses.  But, in filing these Actions in federal courts, plaintiffs have managed to avail themselves of the state law provided statutory damages all while circumventing California's limitations as to reaching such awards.  This situation, as well as the increased burden on federal courts due to the increasing number of these cases, presents the type of "exceptional circumstances" and "compelling reasons" that justify a court's discretion to decline to exercise supplemental jurisdiction over any Unruh Act or other state law claims under 28 U.S.C. § 1367(c)(4).

Declining to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim under these circumstances furthers the values of judicial economy, fairness, convenience, and comity.  <u>See, e.g.</u>, <u>Schutza v. Cuddeback</u>, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017); <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966).  Allowing federal courts to act as a haven for these claims is an affront to the comity between federal and state courts.  California's elected representatives, not this Court, have enacted laws restricting construction-related accessibility claims, and in doing

so, have directed that these claims by high-frequency litigants be treated differently than other matters.

Accordingly, the Court concludes that "exceptional circumstances" and "compelling reasons" exist to support the Court's decision to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.  A significant number of judges both within the Central District of California and elsewhere have similarly declined to exercise supplemental jurisdiction over construction-related accessibility claims asserted under state law.  See, e.g., Whitaker v. 7707 Sunset, Inc., No. CV 20-1149-DMG(AGRx), 2020 WL 5823566 (C.D. Cal. May 26, 2020) (Gee, J.); Garcia v. Thomas, No. 2:20-cv-00684-VAP-PLAx, 2020 WL 5239175, (C.D. Cal. May 7, 2020) (Phillips, J.); Fernandez v. McAuley, No. CV 20-1279 MWF (GJSx), 2020 WL 3655492 (C.D. Cal. Mar. 30, 2020) (Fitzgerald, J.); Garcia v. Ross Stores, Inc., No. CV 20-00950 PA (GJSx), 2020 WL 5239863 (C.D. Cal. Feb. 12, 2020) (Anderson, J.); Langer v. Easton, No. CV 19-8562 PSG (ADSx), 2019 WL 7900274 (C.D. Cal. Nov. 7, 2019) (Gutierrez, J.); Zarian v. Triple M Props., No. 8:19-cv-01951-JLS-DFM, 2019 WL 5538927 (C.D. Cal. Oct. 25, 2019) (Staton, J.); Whitaker v. ALO, LLC, No. CV 19-03312-RGK-GJS, 2019 WL 787737 (C.D. Cal. Oct. 4, 2019) (Klausner, J.); see also Langer v. Petras, No. 19-cv-1408-CAB-BGS, 2019 WL 3459107 (S.D. Cal. July 31, 2019) (Bencivengo, J.); Velez v. Cloghan Concepts, LLC, 387 F. Supp. 3d 1072, 1077-78 (S.D. Cal. June 10, 2019) (Moskowitz, J.);

1    <u>Reyes v. Flourshings Plus, Inc.</u>, No. 19cv261 JM (WVG),

2    2019 WL 1958284 (S.D. Cal. May 2, 2019) (Miller, J.);

3    <u>Schutza v. Alessio Leasing, Inc.</u>, No. 18cv2154-LAB(AGS),

4    2019 WL 1546950 (S.D. Cal. Apr. 8, 2019) (Burns, J.);

5    <u>Rutherford v. Ara Lebanese Grill</u>, No. 18-CV-01497-AJB-

6    WVG, 2019 WL 1057919 (S.D. Cal. Mar. 6, 2019)

7    (Battaglia, J.); <u>Schutza v. Lamden</u>, No. 2:17-cv-2562-L-

8    JLB, 2018 WL 4385377 (S.D. Cal. Sept. 14, 2018) (Lorenz,

9    J.); <u>Reyes v. Snoozetown, LLC</u>, No. 3:18-cv-00498-H-JLB,

10   2018 WL 3438753 (S.D. Cal. July 16, 2018) (Huff, J.).

11       The Court has not deprived Plaintiff of any

12   remedies, as the ADA claim remains pending before this

13   Court, and Plaintiff may, if he so chooses, pursue his

14   Unruh Act claim in state court.[4]  Additionally, any

15   inefficiencies created by this Court's decision to

16   decline to exercise supplemental jurisdiction over the

17   Unruh Act claim are problems resulting from Plaintiff's

18   decision to file this Action in federal, rather than

19   state court.  <u>See Schutza v. Alessio Leasing, Inc.</u>, No.

20   18cv2154-LAB(AGS), 2019 WL 1546950, at *4 (S.D. Cal.

21   Apr. 8, 2019) (noting that, "[h]ad [plaintiff] brought

22   this suit in state court, there would have been only one

23   suit pending and he would have been eligible to receive

24

25       [4] Plaintiff encountered the barrier in June 2020.  Compl. ¶
     11.  Accordingly, the statute of limitations for Plaintiff's
26   Unruh Act claim has not lapsed, and Plaintiff is able to bring
     this claim in state court.  <u>See Harris v. County of San Diego</u>,
27   No. CV 18-924-BTM-AHG, 2019 WL 6683367, at *4 (S.D. Cal. Dec. 5,
     2019) (finding that Unruh Act claims "are subject to a two-year
28   statute of limitations") (citing Cal. Civ. Proc. Code § 335.1).

1   every form of relief he seeks").

2        2.   Service of Process

3        Additionally, Defendant was properly served under

4   Rule 4.  See Direct Mail Specialists, Inc. v. Eclat

5   Computerized Techs., Inc., 840 F.2d 685, 688 (9th Cir.

6   1988) ("A federal court does not have jurisdiction over

7   a defendant unless the defendant has been served

8   properly under Fed. R. Civ. P. 4.") (citation omitted).

9   Service on an individual may be made in accordance with

10  the rules of the state where service will be made.  Fed.

11  R. Civ. P. 4(e)(1).  In California, the summons

12  and complaint may be served by personal delivery or

13  substituted service. Cal. Civ. Proc. Code §§ 415.10,

14  415.20(b).  Plaintiff served Defendant by personal

15  service on August 26, 2020.  See Proof of Service, ECF

16  No. 13.  As such, Plaintiff properly served Defendant

17  and provided the necessary proof of service.

18       3.   Local Rule 55-1

19       Plaintiff has satisfied the procedural requirements

20  for default judgment under Local Rule 55-1.  The Clerk

21  entered default against Defendant on September 24,

22  2020.  Defendant is not an infant, incompetent person,

23  or exempted under the Servicemembers Civil Relief Act.

24  Decl. of Manning ¶ 4.  Moreover, Plaintiff served

25  Defendants with notice of his Application on October

26  12, 2020. Id. ¶ 5.

27       4.   Eitel Factors

28       Here, the Eitel factors favor granting default

judgment as to Plaintiff's ADA claim.

        a.   *Prejudice to Plaintiff*

    A court must first consider whether a plaintiff will suffer prejudice if default judgment is not entered.  See *Eitel*, 782 F.2d at 1471 (citation omitted).  Here, Defendants failed to respond to the Complaint or otherwise appear.  Without default judgment, Plaintiff likely will have no recourse for recovery.  See *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Thus, this factor favors default judgment.

        b.   *Sufficiency of the Complaint & Merits of the Claim*

    The second and third *Eitel* factors call for an analysis of the causes of action.  See *Eitel*, 782 F.2d at 1471 (citation omitted).  Here, Plaintiff's ADA claim is sufficiently stated and meritorious, so these factors favor default judgment as to this claim.

    To prevail under the ADA, a plaintiff must establish that "(1) she is disabled within the meaning of the ADA; (2) the defendant . . . owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. § 2182(a)-(b)).  According to the ADA, a

disability is "a physical or mental impairment that substantially limits one or more major life activities," including walking.  42 U.S.C. § 12102.  Plaintiff's impairments of his musculoskeletal, neurological, circulatory, and cardiovascular systems substantially impair his ability to walk, among other things.  Compl. ¶¶ 1, 17; Pl.'s Decl. ¶¶ 2-3.  Therefore, Plaintiff is disabled.  Further, Plaintiff has established that the Business is a place of public accommodation.

Under the ADA, discrimination includes the "failure to remove architectural barriers . . . where such removal is readily achievable . . . ."  42 U.S.C. § 12182(b)(2)(A)(iv).  The Americans with Disabilities Act Accessibility Guidelines ("ADAAG") establish the technical standards for determining whether a barrier exists.  Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080-81 (9th Cir. 2004) (explaining that the ADAAG "lay[s] out the technical structural requirements of places of public accommodation . . . .").

The ADA requires that curb ramps and flared sides of curb ramps must be located so that they do not project into the parking access aisle and must not be steeper than 1:10.  36 C.F.R. § Pt. 1191, App. D § 406.  Here, Plaintiff alleges that the parking spaces at the Property were not in compliance with the ADAAG. See Compl. ¶¶ 11-12.  Specifically, Plaintiff claims that the curb ramps project from the sidewalk into the access aisle, that the curb ramp exceeds the maximum

14

1    grade allowed under the ADAAG, and that the truncated

2    domes in the accessible parking area create an

3    excessive slope. Id. ¶¶ 12, 18.

4        The next issue is whether removal of these barriers

5    is readily achievable.  The Ninth Circuit has not

6    decided which party has the burden of proving that

7    removal of an architectural barrier is readily

8    achievable.  Moore v. Robinson Oil Corp., 588 F. App'x.

9    528, 529-30 (9th Cir. 2014).  The majority of district

10   courts apply the Tenth Circuit's burden-shifting

11   scheme, which requires the plaintiff to bear the

12   initial burden of producing evidence that supports a

13   finding that removal is readily achievable, and which

14   only then shifts the ultimate burden of persuasion to

15   the defendant.  See Vogel v. Rite Aid Corp., 992 F.

16   Supp. 2d 998, 1010 (C.D. Cal. 2014) (citing Colo. Cross

17   Disability Coal. v. Hermanson Family, Ltd., 264 F.3d

18   999 (10th Cir. 2001)).

19       Here, Plaintiff alleges that the barriers at issue

20   "are easily removed without much difficulty or

21   expense." Compl. ¶ 23.  Moreover, Plaintiff claims

22   that "there are numerous alternative accommodations

23   that could be made to provide a greater level of access

24   if complete removal were not achievable." Id.  These

25   allegations are sufficient to satisfy Plaintiff's

26   burden.[5]  Plaintiff has sufficiently stated a

27

28       [5] Plaintiff does not allege specific facts regarding the
ease of removing the barriers; however, Plaintiff's general

15

meritorious claim under the ADA because Plaintiff has adequately pled that: (1) he is disabled within the meaning of the ADA; (2) Defendant owns and operate a place of public accommodation; (3) Plaintiff was denied full and equal access to the public accommodation because of his disability; and (4) removal of the barriers is readily achievable.

       c. *Sum of Money at Stake*

The fourth Eitel factor addresses the sum of money at stake in the action. Eitel, 782 F.2d at 1471 (citation omitted). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." Vogel, 992 F. Supp. 2d at 1012. Here, Plaintiff seeks a statutory penalty of $4,000, as well as $3,932 in attorneys' fees and costs. Prayer for Relief ¶ 2; Decl. of Manning, Billing Summary. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim, the Court finds that the $4,000 statutory penalty sought is unreasonable. However, the ADA provides for reasonable attorneys' fees and costs. 42 U.S.C. § 12205. Accordingly, because Plaintiff may not seek statutory damages but may seek reasonable attorneys' fees and costs, this factor does not weigh heavily in either direction.

---

allegations, combined with the corroborating photographs, show that the barriers could be easily corrected. This satisfies Plaintiff's burden at this stage.

1

           d.   *Dispute of Material Fact*

2    The fifth <u>Eitel</u> factor is the likelihood of a

3    dispute as to material facts.  <u>Eitel</u>, 782 F.2d at 1471-

4    72 (citation omitted).  Defendant has not answered or

5    otherwise appeared in this Action.  Since Plaintiff's

6    factual allegations are presumed true in this situation,

7    and Defendants failed to move to set aside the default,

8    no factual dispute exists that would preclude the entry

9    of default judgment.  <u>See</u> <u>Vogel</u>, 992 F. Supp. 2d at 1013

10   ("Since [plaintiff's] factual allegations are presumed

11   true and [defendant] has failed to oppose the motion, no

12   factual dispute exists that would preclude the entry of

13   default judgment.").  Thus, this factor weighs in favor

14   of default judgment.

15           e.   *Excusable Neglect*

16   Next, courts consider whether the default was due

17   to some excusable neglect.  <u>Eitel</u>, 782 F.2d at 1472

18   (citation omitted).  Defendant was properly served on

19   August 26, 2020.  Plaintiff served notice of this

20   Application on October 12, 2020.  Nevertheless,

21   Defendant has neither appeared in this Action nor

22   offered any explanation for default.  Accordingly, this

23   factor weighs in favor of granting default judgment.

24   <u>Vogel</u>, 992 F. Supp. 2d at 1013 (finding "it reasonable

25   to infer [the] default was not the product of excusable

26   neglect" where defendant was properly served).

27           f.   *Public Policy*

28   The seventh <u>Eitel</u> factor considers the strong

17

policy favoring rulings on the merits.  Eitel, 782 F.2d
at 1472 (citation omitted).  Notwithstanding such
policy, default judgment is appropriate "[w]here the
[d]efendant's failure to appear makes decision on the
merits impossible."  Warner Bros. Home Entm't, Inc. v.
Slaughter, No. CV 13-0892-DOC (RNBx), 2013 WL 5890682,
at *4 (C.D. Cal. Oct. 30, 2013) (citing Craigslist, Inc.
v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D.
Cal. 2010)).  As a result, and because a weighing of the
Eitel factors tips in favor default judgment, the Court
**GRANTS** Plaintiff's Application as to Plaintiff's ADA
claim.

> g.   *Relief*

In seeking default judgment, "Plaintiff is required
to prove all damages sought in the [C]omplaint."  Philip
Morris USA Inc. v. Castworld Prods., 219 F.R.D.
494, 498 (C.D. Cal. 2003).  Here, Plaintiff seeks an
injunction, damages, and attorneys' fees and costs.

> i.   *Injunctive Relief*

Under the ADA, a plaintiff is entitled to
injunctive relief, including an order to make
"facilities readily accessible to and usable by
individuals with disabilities."  42 U.S.C. § 12188(a)(2)
(2019).  Here, Plaintiff requests an order directing
Defendants to provide accessible routes and parking
facilities for persons with disabilities in compliance
with ADAAG requirements.  As such, the Court **ORDERS**
Defendants to provide ADA-compliant accessible routes

1   and parking facilities.

2          ii.   *Damages*

3       Here, Plaintiff seeks $4,000.00 in statutory

4   penalties for Defendant's alleged violation of the

5   Unruh Act.  Because the Court declines to exercise

6   supplemental jurisdiction over Plaintiff's Unruh Act

7   Claim, the Court **DENIES** Plaintiff's request for

8   damages.

9          iii.  *Attorneys' Fees & Litigation Costs*

10      The ADA authorizes attorneys' fees in this matter.

11  42 U.S.C. § 12205; Cal. Civ. Code § 52(a); see also

12  Jankey v. Poop Deck, 537 F.3d 1122, 1130 (9th Cir. 2008)

13  ("A prevailing plaintiff under the ADA should ordinarily

14  recover an attorney's fee unless special circumstances

15  would render such an award unjust.") (internal quotation

16  marks omitted).  For ADA cases, reasonable attorneys'

17  fees are determined by reference to the lodestar method.

18  Vogel v. Harbor Plaza Center, LLC, 893 F.3d 1152 (9th

19  Cir. 2018) (finding that it was an abuse of discretion

20  for the district court to treat the Local Rule 55-3 fee

21  schedule, which is ordinarily used in instances of

22  default judgment, as presumptively reasonable, rather

23  than using a lodestar approach to calculate attorneys'

24  fees for ADA and Unruh civil rights cases).  A court

25  "must first determine the presumptive lodestar figure by

26  multiplying the number of hours reasonably expended on

27  the litigation by the reasonable hourly rate." Secalt

28  S.A. v. Wuxi Shenxi Constr. Mach. Co., 668 F.3d 677, 689

1   (9th Cir. 2012) (quotation omitted).  The fee applicant

2   must "produce satisfactory evidence—in addition to the

3   attorney's own affidavits—that [his] requested [hourly]

4   rates [were] in line with those prevailing in the

5   community for similar services by lawyers of reasonably

6   comparable skill, experience and reputation."  Grove v.

7   Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 583 (9th Cir.

8   2010) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11

9   (1984)).  The fee applicant bears "the burden of

10  documenting the appropriate hours expended in the

11  litigation" and of "submit[ting] evidence in support of

12  those hours worked."  USW v. Ret. Income Plan for

13  Hourly-Rated Emps. of ASARCO, Inc., 512 F.3d 555, 565

14  (9th Cir. 2008) (quotation omitted).

15      Here, Plaintiff requests that the Court award

16  $3,932 in attorney's fees based on the work of Joseph R.

17  Manning ("Manning") and "Associate Attorney."  Decl. of

18  Manning, Billing Summary.  Plaintiff seeks hourly rates

19  for each attorney as follows:

20      • Manning: $450

21      • Associate Attorney: $375

22      In support of this request, Manning submits a

23  declaration which provides little to no explanation for

24  why he contends for why he contends these rates are

25  reasonable.  See Decl. of Manning ¶ 7.  The explanation

26  for the proffered rates is limited to a single

27  paragraph:

28

> I have been in practice since 2002. My billing rate for ADA related work is $450.00, which is a fair rate for attorneys with similar experience and expertise in this nuanced area of law. My associate attorney's hourly rate of $375 is based on average attorneys' fees charged in the general geographic area with similar experience.

Id.  Manning fails to present any evidence of his qualifications, experience with ADA-related work, or any information on the rates approved by other courts in this district for similar work.  His declaration makes only the above conclusory statement that "he has been in practice since 2002" and his rate is "fair" for "attorneys with similar experience and expertise."  Id. This comment, absent more, is insufficient to support the $450 hourly rate requested.  See Rutherford v. JJ's Market and Liquor, No. 5:18-cv-2656-ODW (SHKx), 2020 WL 883220, at *5-6 (C.D. Cal. Feb. 24, 2020) (lowering the fee amount where same counsel as here failed to "justify their billing rates, providing neither cases in which court have previously approved their rates nor cases in which courts have approved similar rates for attorneys practicing in similar practice areas in this legal market").  Further, in support of his requested rate, Manning highlights that this rate is reasonable given his "expertise in this nuanced area of law." Manning Decl. ¶ 7.  "But, 'such cases are ubiquitous [,] rarely have even mildly complicated issues to address,' and typically involve boilerplate filings." Rutherford v. Lucatero, No. 8:19-cv-1609-JLS-JDE, 2020 WL 2132995, at

1  *8 (C.D. Cal. Feb. 24, 2020) (internal citation

2  omitted).  Given that this Action and the associated

3  filings appear to be nearly identical to the hundreds of

4  other cases filed by Manning on behalf of Plaintiff,

5  among others, in this district, "the Court is skeptical

6  that an ordinary ADA case on *default judgment* justifies

7  work at an hourly rate of $450." Id. (emphasis in

8  original).  As such, the Court finds that given the lack

9  of support, an hourly rate of $400 is reasonable.  See

10 id. (lowering fee for Manning from $450 to $400 per

11 hour).

12     Additionally, Manning failed to provide the Court

13 with even the name of his generically titled "Associate

14 Attorney," let alone any qualifications or discussion of

15 prior experience.  Based on the lack of information

16 supporting the requested hourly rate, the Court is

17 unable to conclude that this "Associate Attorney" rate

18 is reasonable.  Given Plaintiff's failure to submit any

19 evidence to support this requested rate, the Court

20 calculates the fees associated with the Associate

21 Attorney's work at $175 per hour, which has been

22 approved by courts within this district as a reasonable

23 rate for a paralegal.  See Perri v. D & R Restaurant,

24 Inc., No. CV 19-8032 PA (MAAx), 2020 WL 2036656, at *4

25 (C.D. Cal. Jan 28, 2020) (lowering "associate attorneys"

26 rate submitted by same counsel as to $175 per hour when

27 plaintiff failed to submit sufficient evidence

28 supporting the fees).  Given the absence of any support

for Plaintiff's requested hourly rates, the Court
concludes that the following hourly fees are reasonable:

- Manning: $400
- Associate Attorney: $175

The next issue is whether the hours spent in this
Action are reasonable.  Plaintiff submits an itemized
billing statement which reflects that Plaintiff's
attorneys spent 8.4 hours litigating this case.  See
Decl. of Manning, Billing Summary.  After reviewing the
billing statement, the Court concludes that several of
the hours spent in this Action are unreasonable.
Specifically, Manning spent 1.0 hours to "edit/draft
complaint for filing."  Id.  Additionally, the Associate
Attorney spent 1 hour "draft[ing] and fil[ing] a
response to the [C]ourt's OSC"; 0.6 hours "draft[ing]
delcaration [sic] on behalf of client in support of
Plaintiff's Application"; 0.5 hours reviewing and
executing "the Request for Entry of Default"; and 1 hour
drafting the Application and supporting declarations and
exhibits.  Id.  Given that Plaintiff's counsel files
nearly identical complaints and default judgment
applications in all of its cases, save for a few
distinguishing details of fact, the Court finds that
these hours are unreasonable.  Accordingly, the Court
reduces these billing items to 0.4 hours, 0.4 hours, 0.4
hours, 0.4 hours, and 0.5 hours, respectively.

Further, Plaintiff's Associate Attorney billed 1.0
hours to "[c]onduct[] research of public records to

determine identities of business owner and owner of the real property."  <u>See</u> Manning Decl., Billing Summary. But, "[a] basic public records search to identify the owner of the Property is not the type of legal work that should be billed by an attorney at $425 per hour." Love v. Garcia, No. 5:15-CV-02004-CAS-SPX, 2017 WL 2927429, at *4 (C.D. Cal. July 7, 2017) (concluding that plaintiff could not recover for fees associated with the aforementioned unreasonable tasks).  Accordingly, these hours were not reasonably expended and Plaintiff is not entitled to recover these fees.

Because the billing for these tasks was unreasonably expended, the Court excludes them from the attorney's fee award.  <u>See Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983) (stating that "[t]he district court . . . should exclude from [its] initial fee calculation hours that were not reasonably expended) (quotation marks and citation omitted).  Ultimately, with the adjusted billing rates and the exclusion of the unreasonable itemized tasks, the Court **GRANTS** $1,515.00 in attorneys' fees.

In addition, the ADA authorizes the Court to award costs in this matter.  42 U.S.C. § 12205.  Plaintiff seeks to recover $538 in filing fees and service costs, which the Court **GRANTS**.

### III.   CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Application.  The Court

1  **ORDERS** Defendant to provide ADA-compliant parking

2  spaces.  The Court awards Plaintiff $1,515.00 in

3  attorneys' fees and $538.00 in costs, totaling

4  $2,053.00.  The Court **DECLINES** to exercise supplemental

5  jurisdiction over and thereby **DISMISSES** Plaintiff's

6  Unruh Act claim.

7

8  **IT IS SO ORDERED.**

9

10  DATED: November 24, 2020    _____/s/ Ronald S.W. Lew_____

11  **HONORABLE RONALD S.W. LEW**
    Senior U.S. District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28